SALT LAKE CITY et al. v. TELLURIDE POWER CO. et al.
(HYRUM BENNION et al., Interveners).

No. 4874.  Decided November 8, 1933.  (26 P. [2d] 822.)

For former opinion, see 82 U. 607, 17 P. (2d) 281.

*Stewart, Alexander & Budge,* of Salt Lake City, for appellants.

*Fisher Harris,* City Atty., *C. W. Morse, Van Cott, Riter & Farnsworth,* and *Ingebretsen, Ray & Rawlins,* all of Salt Lake City, for respondents.

COX, District Judge.

The above-entitled case comes before this court upon petition for rehearing. The petitioners, who were the respondents in the hearing on appeal, set up six grounds to support their claim. Referring to these several grounds, we will not follow the order that the petitioners have set them out in the petition.

The fifth and sixth grounds are merely the reargument of the case as presented on appeal. From their petition and authority cited, there is nothing new called to the court's attention, and these matters were amply considered by the court at a former hearing.

Petitioners' fourth ground for a rehearing reads as follows:

"The court erred in departing entirely from the issues herein and in effect vacating subdivision VIII of the basic decree herein rendered on July 15, 1901, by adjudicating that respondents have no interest or right in the water after it leaves their lands and finds its way again into the main channel."

Subdivision VIII of that decree, so far as material here, provides that the parties to this litigation "are the owners of the right to the use of all the balance of the water of

the Jordan River for municipal, irrigation, culinary and domestic purposes to the extent of the capacity of their several canals." This quotation refers to after the rights of the West Jordan Milling & Mercantile Company, Utah Mattress & Manufacturing Company, United States Mining Company, William Cooper, Jr., and Bennion & Bennion have been satisfied by the delivery of:

"A sufficient quantity of water which, when added to the accretions of the river from seepage and other sources, will furnish at the various points of diversion and measurement, the several quantities of water herein awarded."

This ground is without foundation, for the original decree of July 15, 1901, as referred to by the petitioners, does not pretend to award the petitioners water below their several points of diversion, nor does it pretend to award them any further right in the water after they have diverted and used it upon their lands and thus satisfied their right. The rights of the petitioners after they have diverted and used the water on their lands and it again finds its way back into the main channel, was before this court on a former hearing on appeal and was amply considered by this court, and the matters set forth in the petition for rehearing are not sufficient, and would not change the conclusions reached by the court in its judgment heretofore rendered.

The first, second, and third grounds for rehearing refer to the Utah Mattress & Manufacturing Company rights and the Cooper rights, and were covered by the appellant's eighth assignment of error in the hearing on appeal. This eighth assignment of error referred to the thirteenth finding of fact of the trial court. Upon this question, in the former hearing on appeal, this court found that the eighth assignment, which refers to the thirteenth finding of fact, "is without foundation of fact, and contrary to law." However, the court in discussing this phase of the case inadvertently stated that the Cooper and Utah Mattress & Manufacturing Company rights were purchased in 1904, and consequently that the procedure of law of the *Deseret Live*

*Stock Co.* v. *Hooppiania,* 66 Utah 25, 239 P. 479, would apply. The fact is, the Utah Mattress & Manufacturing Company right was purchased by Salt Lake City under date of May 9, 1902, and the Cooper rights by the four irrigation companies February 16, 1903. It would therefore follow that the law relating to the change of use and place of diversion at the time of purchase would apply.

Revised Statutes of Utah 1898, § 1263, authorizes the owner of water to "use the water for other purposes than that for which it was originally appropriated."

However, even in the light of the above-cited statute, the conclusion of this court in the hearing on appeal that the thirteenth finding of fact "is without foundation of fact, and contrary to law" still remains the same and is correct, for the record clearly shows that there was no agreement to use the Utah Mattress & Manufacturing Company rights, or the Cooper rights, as pump water. On the contrary, the record shows that these rights were purchased prior to the time the North Jordan acquired any interest in the pump. However, under the record, this would have no bearing in the disposition of the eighth assignment of error in relation to the thirteenth finding of fact, for the reason that the real question presented by that assignment is whether these purchased water rights above referred to should be considered "pumped water." As stated, the record clearly shows no agreement to so treat it, and in the absence of agreement there is no more reason to treat this water as pumped water than there would be to treat seepage and run-off water as pumped water. The same reasons in the absence of agreement, cited by this court in a former hearing on appeal in determining what is pumped water and what is not, would apply in determining whether the water acquired under these particular purchases should be treated as pumped water.

There is nothing in the record to show whether the four irrigation companies after February 16, 1923, and prior to May 11 of that year, made a change in the place and char-

acter of use of the water. Under the old law they would have a right to do this without applying to the state engineer. The record is silent as to whether prior to May 11, 1903, when the new law came into effect, the irrigation companies did, in fact, change the use from that for power purposes to irrigation purposes, or whether the city changed the place of use of the mattress company water. There is not sufficient in the pleadings to make this question an issue in the case. The right to change the place of diversion and the character of use of the Utah Mattress Company rights and the Cooper rights from power purposes to irrigation purposes is only involved indirectly, in so far as it affects the question of what shall be treated and charged for as "pumped water." This would have to depend on the agreement of the parties.

The rest of petitioners' first assignment for rehearing relates to when the court inadvertently stated the date the Cooper and Utah Mattress & Manufacturing Company rights were purchased, and whether this inadvertence is sufficient ground for granting a rehearing. As stated by this court, the above error or inadvertence by the court would not change the court's conclusions or the final decision of the court. This being so, the law is well settled that where this is the case, a rehearing will not be granted. Furthermore, where the result of the court's decision would not be changed by rehearing, the court may, if necessary, correct its former opinion without a rehearing. *Forrester* v. *Johnson*, 126 Kan. 470, 268 P. 809; *Id.*, 126 Kan. 590, 270 P. 602; 4 C. J. 627, § 486; *Treat* v. *Jemison*, 20 Wall. 652, 22 L. Ed. 449; *Warren* v. *Wilson*, 89 S. C. 420, 71 S. E. 818, 992.

Rehearing denied.

STRAUP, C. J., ELIAS HANSEN and MOFFAT, JJ., and BATES, District Judge, concur.

FOLLAND and EPHRAIM HANSON, JJ., being disqualified, did not participate.